The opinion previously filed on August 8, 2000 [221 F.3d 1101], is hereby withdrawn. The petition for rehearing is GRANTED.

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Conrado GARCIA–GUIZAR, Defendant–Appellant.**

No. 99–10435.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2000

Filed Sept. 20, 2000

Amended Dec. 6, 2000

1. The Honorable William W Schwarer, Senior United States District Judge for the Northern District of California, sitting by designation.

Ann C. McClintock, Assistant Federal Defender, Sacramento, California, for the defendant-appellant.

William S. Wong, Thomas E. Flynn, Assistant United States Attorneys, Sacramento, California, for the plaintiff-appellee.

Before: CANBY, REINHARDT, and FERNANDEZ, Circuit Judges.

## ORDER

CANBY, Circuit Judge:

The opinion filed in this matter on September 20, 2000, and reported at 227 F.3d 1125, is amended as follows:

At 227 F.3d at 1127, delete the last sentence of the second paragraph of the opinion (beginning "We do not notice ..."). For the deleted sentence, substitute the following:

> We conclude that the error was harmless beyond a reasonable doubt, however, because the *Apprendi* error did not affect Garcia's sentence.

The citation to *United States v. Nordby* then follows.

At 227 F.3d at 1129, delete the second full paragraph on the page (beginning "Because Garcia did not object ...") and the first sentence of the paragraph immediately following (beginning "Garcia founders ..."). For the deleted passage, substitute the following:

> Although *Apprendi* had not been decided at the time of Garcia's sentencing, Garcia argued in his sentencing memorandum that the amount of drugs for which he was to be sentenced had to be pleaded and found by the jury beyond a reasonable doubt. He relied on *Apprendi*'s predecessor, *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Garcia therefore raised the *Apprendi* issue, and his sentence cannot stand unless the district court's constitutional *Apprendi* error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

> It appears beyond a reasonable doubt that the *Apprendi* error did not affect Garcia's sentence.

The next sentence (beginning "At resentencing ...") then follows without a paragraph break.

At 227 F.3d at 1130, in the third and fourth lines of the left column, delete "Garcia was not prejudiced by the error." Substitute therefor "any error was harmless beyond a reasonable doubt."

At 227 F.3d at 1130, in lines 12–13, insert a period after "Garcia's sentence" and delete the remaining words of the sentence and the citation: "or his substantial rights. *Olano,* 507 U.S. at 732, 113 S.Ct. 1770."

The full amended opinion follows.

The panel has unanimously voted to deny the petition for panel rehearing. Judges Reinhardt and Fernandez have voted to deny the petition for rehearing en banc, and Judge Canby has so recommended.

The petition for en banc rehearing has been circulated to the full court, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R.App.P. 35(b).

The petition for panel rehearing and the petition for rehearing en banc are denied.

## OPINION

Conrado Garcia–Guizar appeals from his resentencing by the district court pursuant to his conviction on four drug counts under 21 U.S.C. § 841 and one count of criminal forfeiture under 21 U.S.C. § 853(a)(1). We affirm.

Two major questions are presented. First, the district court's finding of drug quantity under 21 U.S.C. § 841(b)(1), which was made at sentencing under a preponderance-of-the-evidence standard, was error under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because it increased the statu-

tory maximum sentence beyond that which the jury's findings could support. We conclude that the error was harmless beyond a reasonable doubt, however, because the *Apprendi* error did not affect Garcia's sentence. *See United States v. Nordby*, 225 F.3d 1053, 1059–61 (9th Cir.2000).

Second, the district court on resentencing corrected an error in the method of calculating the amount of drugs establishing Garcia's base offense level at his original sentencing, with the result that Garcia's new sentence was 33 months longer than his original sentence. We conclude that the correction of this error did not evidence vindictiveness or violate due process; we therefore affirm the new sentence.

## FACTUAL BACKGROUND

The facts of Garcia's arrest and conviction are set out extensively in our opinion deciding Garcia's appeal from his initial sentencing. *See United States v. Garcia–Guizar*, 160 F.3d 511 (9th Cir.1998). Garcia was convicted on six counts: (1) conspiracy to distribute methamphetamine (count one) in violation of 21 U.S.C. §§ 846, 841; (2) distribution of methamphetamine (counts two to four) in violation of 21 U.S.C. § 841; (3) possession of marijuana with intent to distribute (count five) in violation of 21 U.S.C. § 841; and (4) criminal forfeiture (count six) under 21 U.S.C. § 853(a)(1).

At sentencing, the district court adopted the findings in the first presentence report. The report based Garcia's recommended offense level on the amount of methamphetamine *mixture* involved. The probation officer stated in the report that the amount of pure methamphetamine also could be used, but that he had not selected this alternative "to avoid unnecessary controversy." The Guidelines, however, permitted no such choice; the court was required to select the method that would lead to a higher offense level. *See* U.S.S.G. § 2D1.1(c) (1995).[1] In Garcia's case, calculation on the basis of pure methamphetamine would have led to a higher offense level.

The court, however, followed the recommendation of the presentence report and based the offense level on the amount of mixture. It included in the calculation the methamphetamine sold to undercover police in all four sales. After combining the total quantities of methamphetamine mixture and marijuana, the court arrived at a base offense level of 28. The court then adjusted Garcia's offense level upward two levels for being an "organizer, leader, or supervisor" under U.S.S.G. § 3B1.1(c), and two additional levels for obstruction of justice under § 3C1.1. This calculation produced a sentencing range on the methamphetamine counts from 135 to 168 months. The district court sentenced Garcia to the minimum of the range, 135 months, on each methamphetamine count and to 60 months on the marijuana count, all sentences to run concurrently. The court also ordered a forfeiture of $43,000.

On appeal, we reversed Garcia's conviction on count four (sale of methamphetamine on July 27) for insufficiency of evidence, and reversed the sentencing enhancement for obstruction of justice. *See Garcia–Guizar*, 160 F.3d at 524–25. We vacated the sentence and remanded with instructions to resentence Garcia and to reduce the forfeiture to $4,300. *Id.* at 525.

At resentencing, the district court adopted the findings of the now-revised presentence report and sentenced Garcia on the four remaining drug counts. In the

---

1. Note B to U.S.S.G. § 2D1.1(c) requires that "[i]n the case of a mixture or substance containing PCP or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual) or methamphetamine (actual), whichever is greater." The error in the first PSR consisted of using the weight of the methamphetamine mixture instead of the weight of the methamphetamine (actual), when the latter produced a greater offense level.

revised report the probation officer acknowledged his previous error in using the methamphetamine mixture to calculate Garcia's base offense level. Upon correcting his error, he calculated the amount of pure methamphetamine contained in the methamphetamine mixture sold to police. He included quantities sold on June 5 (a sale that was not charged in Garcia's indictment), June 8 and June 19, but not July 27. After combining arithmetically the pure methamphetamine with the quantity of marijuana found, the probation officer arrived at a base offense level of 32. As before, the district court followed the report's recommendation and increased the base offense level by two levels for Garcia's role as an "organizer." Garcia's final offense level of 34 produced a new sentencing range of 168–210 months. The district court sentenced Garcia to the minimum 168 months on each methamphetamine count, those sentences to run concurrently with each other and with his 60-month sentence for marijuana possession. Garcia's new sentence was 33 months longer than his original sentence.

## APPRENDI *CLAIM*

Shortly before oral argument in this case, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). There the Court held, in the context of a New Jersey hate crime statute, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63. We have since held that *Apprendi* renders a finding of drug quantity under 21 U.S.C. § 841(b)(1) error under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, when that finding is made by that court at sentencing under a preponderance-of-the-evidence standard. *Nordby*, 225 F.3d at 1058–59.

■ With the advantage of hindsight that the district court did not enjoy, we now conclude that the district court erred by finding at resentencing that Garcia conspired to distribute 450 grams of methamphetamine. This finding "increase[d] the penalty for [Garcia's conviction on count one] beyond the prescribed statutory maximum." *Apprendi*, 120 S.Ct. at 2362–63. Had the district court sentenced Garcia on count one solely on the basis of the facts as found by the jury, the statutory maximum for his crime would have been 20 years. 21 U.S.C. § 841(b)(1)(C) (maximum for distribution of an unspecified quantity of methamphetamine, a controlled substance in Schedule II). Instead, Garcia was sentenced under § 841(b)(1)(A)(viii) (applicable to distribution of 50 grams or more of methamphetamine) which prescribes a statutory sentence of "not . . . less than 10 years or more than life" and a possible fine. 21 U.S.C. § 841(b)(1)(A). Thus, the judge's finding, made under a preponderance-of-the-evidence standard, increased the statutory maximum penalty to which Garcia was exposed from twenty years to life, in violation of the constitutional rule recognized by *Apprendi*. *See Nordby*, 225 F.3d at 1058–59.

■ Although *Apprendi* had not been decided at the time of Garcia's sentencing, Garcia argued in his sentencing memorandum that the amount of drugs for which he was to be sentenced had to be pleaded and found by the jury beyond a reasonable doubt. He relied on *Apprendi*'s predecessor, *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Garcia therefore raised the *Apprendi* issue, and his sentence cannot stand unless the district court's constitutional *Apprendi* error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ It appears beyond a reasonable doubt that the *Apprendi* error did not affect Garcia's sentence. At resentencing, Garcia was sentenced to 168 months in

prison. This term is substantially less than the twenty-year prescribed statutory maximum to which Garcia was subject under the facts as found by the jury. *See* 21 U.S.C. § 841(b)(1)(C). There is no reason to believe that Garcia would have been sentenced to a lesser term had his sentence been imposed under that provision. To the contrary, the judge sentenced him to the minimum permitted by the Guidelines. Thus, although the district court's finding of drug quantity increased the prescribed statutory maximum penalty to which Garcia was exposed from twenty years to life, that increase had no effect upon the sentence that Garcia actually received.

We need not decide here whether the constitutional rule recognized by *Apprendi* prohibits the increase in prescribed statutory *minimum* penalty to which Garcia was exposed because of the district court's finding. *See Apprendi,* 120 S.Ct. at 2360–61 & n. 13; *id.* at 2379–80 (Thomas, J., concurring); *id.* at 2385–86 (O'Connor, J., dissenting). In Garcia's case, the prescribed statutory minimum penalty increased from no minimum penalty on the facts as found by the jury, *see* § 841(b)(1)(C), to ten years on the facts as found by the judge at sentencing, *see* § 841(b)(1)(A). We assume for the purpose of decision that *Apprendi* prohibits such an increase; even so, any error was harmless beyond a reasonable doubt. The district court's application of the sentencing guidelines, which we affirm below, produced a sentencing range of 168–210 months. This entire sentencing range exceeded the higher statutory minimum applied by the district court. For this reason, any *Apprendi* error could not have affected Garcia's sentence.

### INCREASE IN SENTENCE

■ Garcia contends that the district court's imposition of a higher sentence upon resentencing must be considered "vindictive" and therefore violative of his due process rights under *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). We reject the contention.[2] Garcia's higher sentence resulted solely from the district court's correction of an error in Garcia's first presentence report, an error the district court was obligated to correct. On this record, there is no " 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (citation omitted) (quoting *United States v. Goodwin,* 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)); *Bono v. Benov,* 197 F.3d 409, 416 (9th Cir.1999).

■ Garcia argues that his resentencing implicates the prophylactic rule of *Pearce:* "In order to assure the absence [of vindictiveness against a defendant for having successfully attacked his first conviction], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Pearce,* 395 U.S. at 726, 89 S.Ct. 2072. If the reasons do not appear, "a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information ... justifying the increased sentence." *Smith,* 490 U.S. at 798–99, 109 S.Ct. 2201 (internal quotation marks omitted). The presumption of vindictiveness applies, however, only where "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Id.* at 799, 109 S.Ct. 2201 (citation omitted). If the presumption does not apply, the "burden remains upon the defendant to prove actual vindic-

---

**2.** We review de novo Garcia's Fifth Amendment due process challenge to the constitutionality of his sentence. *United States v. Brady,* 895 F.2d 538, 539 (9th Cir.1990).

tiveness." *Id.; Wasman,* 468 U.S. at 569, 104 S.Ct. 3217. This rule applies to resentencings as well as retrials. *See United States v. Rapal,* 146 F.3d 661, 663 (9th Cir.1998).

Garcia does not allege actual vindictiveness. He contends only that a presumption of vindictiveness arises by virtue of his higher sentence. We reject this claim. The record plainly reveals that Garcia received a higher sentence because, upon remand, the probation officer corrected an error in his sentencing calculations. In both sentencing proceedings, the district court adopted the calculations in the presentence report, and imposed upon Garcia the lowest term of imprisonment possible within the guideline range. In short, there is no ground upon which we could conclude that there was a "reasonable likelihood" of actual vindictiveness at play.

We reject Garcia's analogy to *United States v. Jackson,* 181 F.3d 740 (6th Cir. 1999), where the court presumed vindictiveness. It is true that at Jackson's resentencing the court corrected an error in Jackson's criminal history category by adding a previously-overlooked misdemeanor. But the Sixth Circuit found no fault with that correction, even though it raised Jackson's guideline range. *See id.* at 744–46. The presumed vindictiveness in *Jackson* arose from the fact that at resentencing the district court sentenced at the top end of the guideline range, on grounds no different from those that had existed at the time of the original sentence at the bottom end of the range. *See id.* at 744–45. In contrast, Garcia was resentenced at the bottom of the applicable range, and there was therefore no comparable exercise of discretion by the district judge. Garcia's case is more akin to *United States v. Duso,* 42 F.3d 365, 369 (6th Cir.1994), in which no vindictiveness was found after the district court corrected an error at resentencing (omission of a firearm factor) that resulted in a longer sentence for the defendant.

■ Nor may we presume vindictiveness because, on the prior appeal, we criticized vouching by the prosecutor. *See Garcia–Guizar,* 160 F.3d at 520–21. This fact does not give rise to a "realistic likelihood" of actual vindictiveness. *See Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (due process protection of *Pearce* applies to prosecutorial vindictiveness); *see also Garcia–Guizar,* 160 F.3d at 520–21 ("Vouching"). Prosecutorial resentment could not have caused the increase in Garcia's sentence because the guidelines themselves dictated the increase. Having realized his error, the probation officer was obligated to calculate Garcia's sentence according to the guidelines. More important, the district court was required to follow the guidelines; its failure to do so would have been an abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ Finally, we reject Garcia's claim that the government waived its right to correct the error in the original sentencing because it did not cross-appeal from the original sentence. In this circuit an unlimited remand for resentencing permits the district court to "consider any matter relevant to the sentencing." *United States v. Ponce,* 51 F.3d 820, 826 (9th Cir.1995). Thus in *Ponce,* we held it permissible for the district court to make upward adjustments for the defendant's role in the offense and criminal history that it had not made in the original sentencing. *See id.* at 826. And in *United States v. Caterino,* 29 F.3d 1390 (9th Cir.1994), *overruled on other grounds by Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), we held that a defendant who had defaulted a claim so as to preclude its review on initial appeal could urge that same claim on resentencing, which was a "de novo" proceeding. *See id.* at 1396. We explained:

The only remaining question is whether Caterino was still bound at the resentencing phase by his waiver of *Niven*

rights during the initial sentencing. He was not. Just as the district court was free to review the entire sentencing calculus, so too, Caterino was free to make any new arguments or concessions he deemed appropriate given the new set of circumstances.

*Id.* Thus the government's failure to object to the method of calculating drug amounts at Garcia's original sentencing cannot preclude the district court from correcting the calculation at resentencing.

### OTHER SENTENCING ISSUES

Garcia challenges his sentence on three additional grounds, each of which we reject. We review the district court's findings of fact for clear error. *United States v. Ladum,* 141 F.3d 1328, 1342 (9th Cir.), *cert. denied,* 525 U.S. 898, 119 S.Ct. 225, 142 L.Ed.2d 185 & 525 U.S. 1021, 119 S.Ct. 549, 142 L.Ed.2d 457 (1998).

■ Garcia first contends that the district court miscalculated the amount of marijuana and pure methamphetamine attributable to him under the sentencing guidelines. This claim has little merit. Although the government concedes several errors in the district court's calculation, it properly notes that a correct calculation would produce the same base offense level as that calculated by the district court. Even if only the methamphetamine from the June 8 and June 19 sales (when Garcia was present) is included, and the drug quantities advanced by Garcia himself are used, Garcia is responsible for 130.22 grams of methamphetamine. This quantity yields an offense level of 32 under the Drug Quantity Table in U.S.S.G. § 2D1.1(c)(4). *See* U.S.S.G. § 2D1.1(c)(4) (Base Offense Level 32 applicable to "at least 100 G but less than 300 G of Methamphetamine (actual)"). The district court, of course, calculated the same base offense level. We conclude therefore that any calculation errors by the district court were harmless because the district court "would have imposed the same sentence" absent the errors. *Williams v. United States,* 503

U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); *United States v. Sherwood,* 98 F.3d 402, 414 (9th Cir.1996).

■ We also reject Garcia's argument that the district court erred in finding by a preponderance of the evidence that Garcia was "an organizer, leader, manager, or supervisor" within the meaning of U.S.S.G. § 3B1.1(c). Two sets of facts permitted the court to make this finding: (1) Garcia's multiple, seemingly surreptitious, meetings with Cruz surrounding the June 8 and June 19 drug sales, and Garcia's subsequent trip to his storage locker on June 8; and (2) the seizure from Garcia's locker of the large majority of the drug proceeds from the two sales ($1600 of $1800 from the June 8 sale, and $2700 of $3500 from the June 19 sale). On the strength of these facts, the district court found that Garcia was supplying Cruz with methamphetamine as needed to make the sale, and then taking the majority of the proceeds to his locker. This evidence is sufficient to permit a reasonable inference that Garcia was in charge of the operation, at least with respect to Cruz. *See* U.S.S.G. § 3B1.1, comment. (n.4) (factors distinguishing leadership role include, among others, "the exercise of decision making authority," "the claimed right to a larger share of the fruits of the crime," and "the degree of control and authority exercised over others"). The district court's findings to this effect were not clearly erroneous. *See United States v. Hoac,* 990 F.2d 1099, 1110 (9th Cir.1993) (clear error standard for finding under § 3B1.1(c)).

■ For similar reasons, the district court did not clearly err in finding that Garcia had not met his burden of demonstrating that he was a "minor participant" under U.S.S.G. § 3B1.2(b). *See* U.S.S.G. § 3B1.2, comment. (n.3) ("[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal."). Garcia argues that his role should be compared to that played by other "co-

participants," not just his co-defendant Cruz. Garcia observes that there was no methamphetamine found in his home (although ledgers were found there), but fails to point to other more culpable participants. We therefore reject Garcia's challenge.

## CONCLUSION

The judgment of the district court is

**AFFIRMED.**