NGUYEN, Circuit Judge,
dissenting:
I respectfully dissent. In my view, reversal is unwarranted because any error was harmless.
A. Charley’s Training Records
Even if the unredacted training records for Charley (the dog) had been available, they would not have changed the district court’s finding that Charley was reliable. In United States v. Cedano-Arellano, a dog sniff case with similar facts, we found that “while defense counsel should have been given access to the requested documents, there was nothing in those documents that would have changed the ultimate determination that the agents” had reasonable suspicion to search the vehicle. 332 F.3d 568, 574 (9th Cir.2003). The same conclusion applies with equal force here.
The government produced records that revealed Charley’s scores, which were nearly all passing marks. It redacted the comments on Charley’s performance and how the training was conducted. On appeal, we have the benefit of the unredacted records and can readily see that the redacted comments are overwhelmingly positive. If anything, the redacted comments *493 strengthen the district court’s finding that Charley was reliable.[1]
The.-.facts here contrast sharply with those in United States v. Thomas, where we reversed a denial of a motion to suppress because of the district court’s reliance on redacted training records. 726 F.3d 1086 (9th Cir.2013). In Thomas, we did not have the unredacted records, and thus we “[could not] say that there is ‘nothing in those documents that would have changed the ultimate determination that the agents had [probable cause] to support their search.’” Id. at 1097 (first alteration added, second alteration in original) (quoting Cedano-Arellano, 332 F.3d at 574).
Moreover, Beny-A, the dog in Thomas, is no Charley. Among other differences, Beny-A and his handler received failing scores on every single performance record in various categories, and received failing scores around 6 percent of the time. See Excerpts of Record of Appellant at 216-31, United States v. Thomas, 726 F.3d 1086 (9th Cir.2013), ECF No. 42. The government in Thomas also conceded that the redacted comments likely would include “critiques of the team’s competence as well as discussions about areas for improvement.” Thomas, 726 F.3d at 1097. Charley, on the other hand, received failing scores less than one-half of one percent of the time, and the redacted comments on his records are overwhelmingly positive. The redacted comments here-nearly all along the lines of “Great job! Team works very well together” and “Canine has a great nose and strong alert” — generally praise Charley’s performance. The redac-tions do not undermine the probable cause analysis, and any error in redacting the records is therefore harmless. See Florida v. Harris, — U.S. —, 133 S.Ct. 1050, 1057, 185 L.Ed.2d 61 (2013) (observing that “evidence of a dog’s satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert”).
B. The Cell Phone Records
Any error in the district court’s failure to suppress the cell phone records was harmless. Salazar pleaded guilty to being a member of a drug conspiracy, a charge that was amply supported by other evidence. To find guilt of conspiracy, the government need only prove “an agreement to accomplish an illegal purpose.” United States v. Jackson, 167 F.3d 1280, 1285 (9th Cir.1999). Here, evidence that Salazar agreed to smuggle drugs is ample: the narcotics were found in the car that Salazar owned, directly under his seat, and he appeared to be feigning sleep throughout the entire stop (including at secondary inspection), a practice which the attending Border Patrol agent identified as often used to avoid inspection. Given the strength of this evidence, any error in admitting the cell phone records is therefore harmless. See Fed.R.Crim.P. 52(a).
*494 Salazar suggests that we follow the Tenth Circuit’s approach in United States v. Benard, 680 F.3d 1206 (10th Cir.2012). Under Benard, harmless error is applied to the question of “whether there is a reasonable possibility that the error contributed to the plea,” which is a difficult task because “a defendant’s decision to plead guilty may be based on any factor inside or outside the record.” Id. at 1213 (quoting People v. Grant, 45 N.Y.2d 366, 408 N.Y.S.2d 429, 380 N.E.2d 257, 264 (1978)) (internal quotation marks omitted).
We have not adopted this approach in the conditional plea context. See, e.g., Cedano-Arellano, 332 F.3d at 573-74 (applying harmless error analysis to an appellant’s conditional guilty plea when the existence of other evidence would not have changed the outcome of a motion to suppress); United States v. Davis, 530 F.3d 1069, 1083-84 (9th Cir.2008) (same). Even accepting Salazar’s suggestion, however, there is little evidence to suggest that he might not have pleaded guilty had the cell phone records been suppressed. Suppression of the cell phone records was mentioned nearly as an afterthought during the suppression hearing, and nothing suggests that their content (which remains unknown) would have played a significant role in the government’s case.
Salazar raises a number of additional arguments, none of which is persuasive. Therefore, I would affirm.

. The majority states that the relevant question is not Charley’s reliability, but the government’s responsibility to provide Salazar with a fair hearing. But to the extent that this is a discovery issue, it bears mention that defense counsel did not object below to the redactions. As we explained in United States v. Henderson, when the government withholds discovery information based on a claim of privilege, "a district court must hold an in camera hearing whenever the defendant makes a minimal threshold showing that disclosure would be relevant.” 241 F.3d 638, 645 (9th Cir.2000) (quoting United States v. Spires, 3 F.3d 1234, 1238 (9th Cir.1993)) (internal quotation marks omitted). By failing to object or request an in camera review, Salazar failed to make such a showing. Moreover, Salazar's failure to object arguably limits us to plain error review, as the government argues. In any event, even under harmless error review, Salazar’s claim fails.